v. Ruzickie. Mr. Diller. Thank you, Your Honor. Good morning. I'm Barry Diller. I represent the appellant, Shelley Yelitchney. We're the appellant, but Ms. Yelitchney was the verdict winner at trial. Ten months after the trial, the trial court reversed that on a post-verdict motion. I will obviously address anything the court desires. My intent is to court setting aside a trial stipulation, and more importantly, within that stipulation, setting aside the whole course of proceedings. And then secondly, I would discuss the Fourth Amendment issue, which was the substantive issue at stake. Why doesn't the trial court have that authority to set aside stipulations? Because the timing of it after trial was – the court actually made findings of fact on matters that were not tried. All parties – But didn't the court give the verdict to the defendants because they said this is a matter of law? It's not a matter of fact. The facts don't matter. As a matter of law, the probation parole office has the right to go into the habitual or the residence of the parole violator and arrest them. And that did not have an issue of fact at all that the case shouldn't have gone to trial in the first place. Now, as a district judge, I know there were a couple occasions when I let a case go to trial, and there was an appeal involved. But sometimes the jury doesn't do what you think they're going to do, and you get a verdict for the plaintiff, and then you have to bite the bullet and say, this is really an issue of law, and I am going to grant the verdict, the judgment, for the defendant because this never should have gone to trial in the first place. And isn't that what we're dealing with here? Your Honor, you're correct. That is what we're dealing with, except that because of this stipulation that the narrow focus of the trial was whether Ms. Uliczny did or did not consent to entry, the parties did not try and present evidence and present direct and cross-examinations on whether it was or was not reasonable for Agent Riziki to believe that the parole absconder lived in that residence. So you think we need to remand for a determination on that? Well, I actually do not think that. I think that that would be a minimum, and I can tell you enormous amounts of evidence that would have been presented had that been the issue. But we have a record before us that seems to indicate pretty strongly that this was his residence. No. You have a record based on both parties agreeing the only questions we will ask concern consent or lack of consent, the only arguments we will make concern consent or lack of consent. All right. Well, the evidence that his identification card listed this as his address, that his bills were coming to this address, that he was seen at this address, that in fact police surveillance went to arrest the parole officer, went to arrest him because he was at that address. Right. The only evidence that this was actually his residence as opposed to merely a place where he was, was one piece of, I think one sentence in Riziki's testimony that I got something from my supervisor that said that he registered here through, I believe, Penn DOT as a non-driver's ID. What about social security card? Was that listed there? I don't think so. Or birth certificate? I don't think so. And certainly nothing in the trial indicated that. Or birth certificate? No. No. Received his mail there? No. He received some mail there because he had used it to get an ID. And however, it wasn't, first of all, it wasn't his residence. And trial counsel, because of this stipulation, did not question Riziki, for example, about how many times in his experience as a parole agent, parole absconders lie about their residence, did not question Riziki about the efforts made to find out if this was or was not his residence. So there's reason to, yeah, but the test is reason to believe, is that correct, that this was his residence? And weren't there sufficient facts? The trial judge used in the post-verdict motion. I don't believe it's the test. And this really does go down to issue two, the Fourth Amendment issue. All of the cases saying that are cases with arrest warrants. Here, there was no arrest warrant, nor search warrant of any kind. So here we have a 300-pound man pounding, not in uniform. But there didn't have to be an arrest warrant for a parole officer to go into what he reasonably believed to be the parole violator's residence and take him into custody. Well, that's what the trial judge held, but no court. Are you saying that's wrong as a matter of law? Yes, I am. Yes, I am. No court has held that. And I think that an arrest warrant serves or a search warrant serves a very important purpose and would have served it in this case to say to the unwilling homeowner or lessee, you may not want me here, but I have a right to be here. This is lawful. Let me in. Instead, this was, as the testimony showed, a crazy man banging and saying, let me in, period. He's actually lucky that the person inside didn't have a gun and defend herself with it because that would have been a defense in a homicide case, that there was just a crazy man demanding entry without any indicia that he was entitled to be there. Fortunately, that's not the case we have here, but that is one of the very purposes of an arrest or search warrant, to say I'm entitled to be here. And that wasn't the case. So that every case, every case where entry was made even mistakenly based on it being the wrong residence, there was a warrant. And whenever there wasn't a warrant, the courts have held that it was an illegal entry. So, yes, I think the trial court was wrong on that Fourth Amendment analysis. Are you familiar with a case from this court called United States v. James Hill? I'm not. I apologize. And it was not in the briefs. I'm not familiar with the case. Well, you're right. It wasn't in the brief. But it seems to hold that – well, first of all, I should inquire whether – was there any – in these other cases, there was a commitment, consent. The parolee had the consent to have his home residence searched. The record here, as far as I was able to determine, doesn't tell us whether there was any such consent. Well, if there was – because you're right, it's not in the record. It was not of this residence, was never the registered residence of this parolee, Claudia Robinson. He was an absconder. In other words, he had indicated, I'm not telling you where I live. And so the fact that he went to some residence, a person we know is called deceptive, and then doesn't automatically make it reasonable for a parole agent to then break in the residence. That's a term we disagree with, Your Honor. I'm sorry? If we disagree with it. We're trying to get to the – you are making a legal argument. I am. That – Yes. A parole officer cannot enter a residence with reason to believe that a violation has been committed. You're right. I think maybe you ought to – we ought to give you the comment – opportunity to comment within several days on Hill versus – the United States versus Hill, because it seems to me as a whole that, as Judge Ross suggested, that a parole officer doesn't need a warrant to do this, even though there is no consent or regulation giving him express authority to do that. Okay. The United States versus Hill is 967 Fed 2nd 902. It's authored by that distinguished Judge Sirica. I would be glad to comment on it, Your Honor. Okay. I think unrelated now to that Fourth Amendment issue, one of the things we raised – well, let me answer this. In the defendant's answer in the district court, he never raised this issue, never said it was reasonable. If we look at his – it's in the appendix, his answer. Never raised it. Raised consent as an affirmative defense. Never raised I was entitled to be there because I was of a mistaken belief that this was Claudia Robinson's residence. In his summary judgment motion, which is not part of the record – I do have copies here and of his brief – never raised it. Then at trial – and therefore there was no discovery on it because it wasn't raised factually or legally in the answer. Then at trial, agreed that this is – the only issue is consent, as raised in his answer. And then we tried the case only on the consent issue. And then the jury instructions submitted by defendant raised consent, did not raise this other issue. And the special verdict form agreed to by defendant's counsel concerned only consent. So this issue, if we're wrong on the Fourth Amendment issue, this issue was never raised. So I suggest it is waived. And I suggest that this Court should not answer it because, you know, the principle of constitutional avoidance, avoid the constitutional question. If another question can answer – can decide the case. But didn't the Commonwealth from the beginning say, we didn't need a warrant? And the Court would not, until after the trial, would not give judgment on that basis. So the Commonwealth of Pennsylvania certainly has maintained its position at trial. No, actually, Your Honor, that's not the case. Even on summary judgment, the Commonwealth made two arguments. One, we had a warrant, which they did not. And two, and second, that there was consent, which we won on at trial. The issue of, we didn't need a warrant, was not an issue at any point, at any point, until case verdict. So why did the Court grant judgment despite the verdict then? Yeah, well, it was an issue post-verdict, but not until then. So we never raised it. And of course, the limited scope of the trial was never, ever, ever brought up until the trial judge sua sponte brought it up. Well, now, let me make sure – you started off with an argument that I had not perceived, and I want to make sure I understand. You're saying that you did not have a fair opportunity to offer evidence relevant to whether there was reason to believe this was his residence. Is that what you're saying? Yes. And I'm saying it, and, for example, the trial court even – one of our issues we raised, but the trial court denied us the opportunity to present eight or some subset of eight witnesses in an incident two years earlier where this defendant did the exact same thing, knowing it wasn't the residence. And for the Court's information, because I know that you asked should you remand, those witnesses would have been very relevant, have moved outside the jurisdiction, and are beyond our subpoena power. So a remand would genuinely not be an adequate remedy for us because we can't prove what we could have proven at trial. We can still make certain attempts, but not as complete attempts. So what is it that you want, then? What I'm asking the Court to do is to reverse the trial court and order that judgment be – Reinstated. Be – right, be reinstated in accordance with the jury verdict. And that's what it – Thank you. Thank you, Your Honor. Good. Mr. DeLone? Your Honor, can I have just a second to transport a few things? Yes, of course. Thank you. Before Mr. DeLone starts, should I have – Come on up here. Okay. I know that you suggested that I inform the Court, give my opinion on that case. Is there a time period? We'd like to have something within 10 days, please. Thank you, Your Honor. All right. And we'll ask – we'll ask for both counsel. We'll be happy to do that. Good. May it please the Court, my name is Bart DeLone. I'm with the Pennsylvania Attorney General's Office. And I'm here on behalf of Appali Ruzissi. Could we start where we left off here? And he says – I didn't understand the argument, so – but I want your response. He said, we had no fair opportunity to tender evidence on the subject of whether there was reason to believe that he was in residence at this house. Yeah, I'd be happy to start – What was the opportunity that they had? I'd be happy to start there, Your Honor. Firstly, the reason I asked for the Court's indulgence is because Mr. Diller characterized certain things in the record about the opportunity to present exactly that. And I would point to the fact – and Judge Roth, you're exactly right. We made the legal argument presented here at summary judgment, as recognized by the District Court at Appendix 24, where it mentioned our argument that in any event, they did not need an arrest warrant because of a specific statute. So we made that argument. And moreover, as part of the summary judgment record, – This is the defendant's statement of material facts. And this goes to your point, Judge – Hold on. This goes to your – No, no, get in front of the microphone. This goes to your point, Judge Scirecca, where you talked about what Agent Rizicchi knew at the time of the arrest. This is paragraph 11 of our statement. Claude Robinson obtained an official photo identification card from the Pennsylvania Driver's License Center as well as a Social Security card and birth certificate indicating the application for each as the address in question. And the important thing is plaintiff's response to that specific paragraph, which simply states, Admit it. So that's stuff that was not disputed in the record for purposes of summary judgment, which is why, with all due respect, we thought we should have summary judgment granted on this issue. And we also ask that the conclusion of the – Wait a minute. Wait a minute. I didn't make myself clear. I didn't ask you whether there was any evidence of reason to believe that he was resident in this house. Okay. I ask you what opportunity and notice – notice and opportunity did they have to offer contrary evidence? Well, I think – Which, of course, is essential to due process of summary judgment. If you're going to move for a summary judgment on that, they've got to have the opportunity. Right. And they had the opportunity, as I read it. We asserted those – those facts with respect to what Agent Ruzzicchi knew, and they admitted them. So they had the opportunity to say, Denied. We dispute those facts. They didn't do it. And really, they couldn't do it, Your Honor, because Ms. Olitschi accompanied Mr. Robinson when he went to get the application and put her address down as his address, which is what Agent Ruzzicchi used to reach his reasonable basis, which is the right standard under Porter, to determine that Mr. Robinson was a resident of – at this particular location. I don't understand them to be disputing those facts. The question was whether they had an opportunity to offer their own evidence. Exactly. And they didn't present any. Frankly, we think because there isn't any. Just on this sort of out of the blue and surprise, we reasserted the exact same legal argument at the close of their case. And I would refer the Court to Volume 3, Appendix 198 to 200, making the exact same argument again. The District Court recognized it. And then we made the exact same argument at the post-trial motions, which Plaintiffs' Council had the opportunity to brief. So this is not a circumstance where suddenly out of the blue some issue arose that hadn't been addressed. It had been addressed at least three separate times. And to the District Court's credit, we think, the District Court finally recognized that it had made a mistake in not granting summary judgment. So Judge Roth, your characterization of the case is exactly right. This is simply a circumstance where whatever happened at trial, the trial itself was utterly unnecessary. And with respect to the... We cited in our brief to all these cases that have to do with when a stipulation is and is not binding on a court. And the fact is that it's up to the court to decide that. That's why it's an abusive discretion standard. And the Court correctly determined, as this Court has repeatedly, as, for example, under Mint, that to the extent this had to do with some legal issue, it was not bound by it. There's absolutely nothing wrong with that. That's Hornbook law. Repeated case law. On the Fourth Amendment issue, as we briefed it, over and over again, courts have talked about the balancing between someone who is on parole or probation and the government's interest. And if you have an arrest warrant, that is all you need. That's what Williams said. That's what Knight says. You have to look at Knight's... In each of those cases, there was a consent of the parolee for search. Well, you asked that question... Do you agree that the record here has no evidence that... Your Honor, it's not in the record. You're absolutely right. But as a matter of law, anybody that agrees to go into parole has to sign the same sort of consent that you find in this Court's case in Williams. So... Why on earth is that not in the record if that's the case? It should have been placed in the record, Your Honor. It was not. In Hill, there was no such... The reason I directed  is that in Hill, there was no such consent. United States v. Hill. Yes. But again, Your Honor, I agree with you, it should be in the record. It is not. We've distinguished the cases that a learned opposing counsel mentioned. Because our position is that there was no need for a trial unless the Court has specific questions about evidentiary matters concerning a motion in limine, I don't think we will rely on a briefs on the probative v. prejudicial excuse me, on the limited search and detention of summary judgment. Again, I think it's pretty clear they don't want to apply the Graham standards. The District Court recognized the Graham standards, properly applied them here, and certainly was not irrational or arbitrary in seeing that this was more prejudicial than probative. I don't think the Court need reach qualified immunity, but because this is such a specific, factually specific case, even if you got there we are entitled to qualified immunity. I think the District Court  after being repeatedly asked to come back to the legal issue presented and to address it correctly. And we think the Court should affirm that conclusion. Why was not the illegal seizure claim a jury issue? The um, well because it's an objective reasonableness test under Graham, so it's a legal question. And you apply Graham factors and to reach a legal conclusion as to whether or not the force used was objectively reasonable under all the circumstances presented. And what do you cite for the proposition that that's a matter of law rather than a matter for the jury? It's Graham, Your Honor. 394 to 395. Thank you. I have a question, Mr. DeLone, about the Board of Probation and Parole Regulations Title 37 Section 71.1 which talks about if an agent has reason to believe that a parolee has violated the conditions of his parole, and it talks about applying to the District Supervisor for the issuance of a warrant to commit and retain, and then it talks later on about if he can't contact the District Supervisor or feels that immediate confinement is imperative he may utilize an order to detain for 48 hours and so forth. And I'm just a bit confused as to what was done what those sections mean and what was done in this case. First, I guess, are they applicable to this case? I mean, I think they're applicable, but what they say is may. He's not required to do it. It's sort of an alternative procedure that he can follow, but he's not required to do it. What is it alternative to? Yeah. Hold on just a second, Your Honor. Surely, take your time. Your Honor, can I go back to my desk for a second? Yes, of course. Okay. ... This is your 37 PA Code 71.1? Yes. And what paragraph? Well, A it seems that A and D I guess my question is to what extent... Oh, you're asking the interplay between A and D? Yeah. And to what extent are these to be followed? Do they need to be followed? Well, like I said, it doesn't say must. And I think if you're going to read A and D together, you can say you can do these circumstances under A, but you may do them, but you're not required to do them. And then it talks about if he's unable to contact a district supervisor and he can use a 48 hours warrant, but again I think the key part is the A part, which is this is a code and it's regulation, but you're not required to do it. It's a procedure you could follow, but it's not a procedure you must follow. I guess I'm trying to figure you think it's discretionary with the parole officer? Yes. So the regulations don't nullify the statute? No. Absolutely not. And you're saying the statute gives we should look at the statute? Exactly. But to the extent that and it's an important extent that the issue turns on weighing the expectations of privacy on one hand, and the state's legitimate interest in the objectives of its parole system on the other hand, if the state system says that we can have warrants doesn't that suggest that the state doesn't have that strong an interest in having parole officers able to make arrests without warrants? I think I wouldn't quite say it that way, Your Honor. What I would say is you have a circumstance where you've got somebody on parole, and in this instance you have somebody who's a parole absconder. He's a fugitive. And I think it was Porter, but it was one of the cases we cited where they had a bench warrant put out for someone who didn't appear for something. That's very similar to this. And I think what the General Assembly of Pennsylvania was doing was saying, look, this is pretty simple. You're supposed to be somewhere at a given time if you're going to follow your parole. And if you don't do that, you're a fugitive, and we're giving you the authority to arrest that person wherever you reasonably believe him to be. So you have to look at it in the context of the circumstances, and the reason those circumstances work is because of the balance that you were talking about, Judge Stavelton, between what kind of privacy rights you have as a parolee, and what kind of an interest the Commonwealth has in So to the extent there may be some inconsistency between the statute and the regulations, you say we should follow the statute? Yes, sir. Good. Any more questions? Nope. Mr. Dillon, thank you very much. Thank you. Mr. Dillon? Thank you. If I may, I'd like to address two things quickly that Mr. Dillon mentioned. First, concerning the summary judgment motion. The issue presented here was not presented in that motion. The motion itself just said defendant moves for summary judgment, so it doesn't shed any light. The brief and the issue as defined by Rezicki was whether Rezicki was permitted to enter a residence without a search warrant when he had probable cause to believe that the subject of an arrest warrant resided and was so the subject of an arrest warrant and Claudie Robinson was not the subject of an arrest warrant. That was everything that was briefed, everything that every fact that was brought to bear in the summary judgment motion concerned that issue as defined by the defendant. So this was not simply post verdict was not simply rehashing the summary judgment motion. This was a new motion. Well, you had the opportunity to brief whether there was a warrant but didn't you also have the obligation to brief the reasonably believes and if you did not agree with the reasonably believes didn't you need at that point to get that of your disagreement of record instead of admitting it? Well, we actually we didn't admit it and what Mr. DeLone showed that we did admit, we admitted certain facts. We didn't admit that those facts constituted a reasonable belief. We admitted facts that were facts but because the issue of whether it was or was not a reasonable belief was not an issue, we didn't have to bring forth all of the other facts about whether it was or was not We're looking at this from the point of view of the officer and the facts he has before him that there is an identification card that there's a birth certificate and there's a social security card all listing this as a residence and that the man has been seen there and is presently there. Now can we not as a matter of law say on the basis of those facts he reasonably believed that that was a residence? No because it wasn't an issue so therefore we didn't raise... But you're not denying that those facts are true? No, I'm not denying... And on the basis of those facts alone, couldn't an officer reasonably believe that that was a residence even if it wasn't a residence? We're talking about his belief. Was that reasonable? Well, if those are the only facts that exist in the world, maybe. Okay, and those are the facts he is considering in going into this residence and is he unreasonable in saying that these facts confirm that this is the residence? He's unreasonable in not doing a bit more and we didn't present that because it wasn't an issue. He's not reasonable in not saying absconders sometimes lie about their residence and I know this absconder lied about his residence. He wasn't reasonable in not determining who was making inquiry. We didn't raise any of these things. It doesn't matter who owns the house does it if that's where he's residing? No, but he didn't make any inquiry. That's assuming that's where he's residing and he was not and he didn't make any inquiry and we didn't present these facts because it wasn't an issue raised. But you agreed to the facts? No, we agreed to certain facts but we didn't raise the universe of facts because it wasn't an issue before the court. Well, reasonable belief was an issue before the court. It wasn't. All right. You know, I don't think there's anything to be gained from Well, the first part of that issue was the subject of an arrest warrant. That, as far as I see, ends the inquiry on that issue because that was one thing that the Commonwealth was saying or was saying as part of his argument. We knew that was not there. Also, Judge Sirica, you asked about the regulations. I don't think that the regulations mean that you may ask for a warrant and Part B says and your supervisor can say yes or no or you can just ignore this completely at your discretion. Don't risk being told no. I don't think that's discretionary. Does the statute trump the regulations? Well, certainly arguments can be made in general that regulations go above and beyond the statutes, but when regulations are implementing statutes and are not inconsistent with the statute, no, they do not. Any other questions? Mr. Diller, thank you. Mr. DeLone, thank you. The case was very well argued. We will take the matter under review.